The next case for argument is Sorrell v. CA Water Service. The next case is Daniel Mitchell v. Rosetta Sorrell v. CA Water Service. This case involves an action brought by Rosetta Sorrell for discrimination and harassment arising out of her employment at California Water in Stockton, California. We're before this court because the trial court granted summary judgment on a number of issues. I'd like to address initially the issue that has to do with exhausting the administrative remedies on behalf of Mrs. Sorrell. This, of course, is important. I think there's a letter brief that's been filed since all of the briefs were submitted. But it's important because it has to do with the applicability of Title VII to her claims. Well, let me just ask, assume that we agree with you that Sorrell didn't need to file separately with the EEOC. Doesn't she still need a right-to-sue letter from the agency to pursue a claim under Title VII? Well, when you're saying the agency, are you saying the EEOC or are you saying the Fair Employment FEHA? Because if under the work-sharing agreements that exist and have been acknowledged by the United States Supreme Court and by this circuit many times, if you're saying that, all that is required to put one before the EEOC is filing with the Fair Employment and Housing Act organization. So if she has a right-to-sue letter from FEHA, there is no necessity to have a letter from EEOC, because how would you get a letter other than filing with EEOC? That's the only way. Do you have any case that says that? A case that says? Right, if you have the one, you don't need the other. Absolutely. There's L-A-Q-U-A-G-L-I-A, La Quija v. Rio Hotel, 183 Federal 3rd, 1172, 9th Circuit, and Green v. Los Angeles County Superintendent of Schools, 883 Federal 2nd, 1472, 9th Circuit. Now, those cases say you don't need a right-to-sue letter from the EEOC? No, they don't say you don't need a letter. No case has ever said that. Okay, well, that was the question, I think. What they said was you don't need a second filing. Yes, that's right. Judge Nelson said assume you don't need a second filing. That's right. Assume a filing with the state agency is sufficient. Yes. But then her question is, assume your filing is adequate, how are you excused from getting a right-to-sue letter? The only way you'd get a right-to-sue letter from EEOC, if you filed with FEHA, is to file with EEOC. Well, I'm not sure that's correct. I haven't looked into that, I must say, in connection with this case.  But she says that when you file with the state agency, they transfer your case to the EEOC. Isn't that what happens? Sometimes they do. Sometimes they do nothing. And, indeed, in Acquiega v. Rio Hotel, page 1177, the court said, Prohibiting any remedy to claimants who file discrimination complaints with an appropriate state or federal agency within the 300-day deadline is entirely at odds with the purpose of work-sharing agreement and with Title VII. These agreements are intended to eliminate duplication of effort between the agencies and to provide an effective procedure for claimants to seek redress for grievances. And in Green v. L.A. County Superior Court, it says, Requiring a second filing by the grievance party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality. However, that doesn't get us beyond Nelson's question to you, which was, both those cases state you don't have to have a second filing. As I understand it, there is, what you read from one of the cases, a work-sharing agreement. And under that agreement, my understanding was, and I'm not at all sure of this, that the California agency transfers the filings to the EEOC. That may or may not be correct. But you're treated as having filed with the EEOC when you file with a state agency. The next step after filing with the EEOC is to get a right-to-sue letter. We're looking for an answer to the question of, A, are you excused from a right to obtain such a letter because you've filed with a state agency? Or, B, what's the consequence of your suing without having obtained such a letter? I'm sorry. I didn't mean to cut you off. In LaQuinca v. Rio Hotel, again, at page 1176, the court said, in determining whether LaQuinca's claim was dual files, it does not matter whether or not her January 19th charge actually was forwarded to EEOC, only whether it was intended to be forwarded under the work-sharing agreement. So there are courts that have held, and I, again, the reason for my question, Jones v. Grinnell, 235 Fed 3rd, says that the work-sharing agreement does not extend to exhaustion of remedies, which would lead me to believe, although I could be wrong, that a right-to-sue letter, regardless of where it's filed, needs to be obtained. I respectfully must disagree. And tell me why. Because the case, the Jones case, you see, was used in Scheck v. Stanford University Medical Center, which is the most recent case that appears in the letter brief that was filed by the defendants in this case, the appellees in this case, to support the fact that you need a right-to-sue letter from EEOC. In that case, it says that because there are different time limits for Title VII claims before the EEOC, and different time limits for the state agencies filing the case, and that's that 60-day deferral period that they're talking about, there's a 60-day deferral period before the EEOC acts, unless the state first acts by giving you a right-to-sue letter. Then it's waived. Anyway, in the Scheck case, it goes on to say that the Title VII time period is different than perhaps the time period in the state agency, and that this requirement, different times, this requirement implies, and the word implies is not mine, it's in the case, implies that a right-to-sue notice from the state agency is not interchangeable with a right-to-sue notice from EEOC. The simple state of affairs is even that case, which interpreted Jones v. Grinnell, even that case merely says there's an implication that it's necessary to have a right-to-sue letter from one or the other. But my point is, if you don't even have to, as the Ninth Circuit case in Laquita said, if you don't even have to file with EEOC and there is no requirement that the filing ever be received by EEOC, you certainly can't say that she, that Sorrell, should be foreclosed, should be foreclosed from not proceeding under Title VII because a right-to-sue letter was not issued by EEOC. That, as I understand it, has never been the law. Now, the defendants cited two California cases, both in Southern California, and one of them is Rowan. If you look at those cases, they don't even consider the existence of the work-sharing agreement, which, incidentally, the United States Supreme Court addressed in EEOC v. Commercial Office Products at 486 U.S. 107, and I cite that because it's also cited in the Rio Hotel case, which we've been talking about. And in that case, that is, in the Rio Hotel case, citing from the Supreme Court case, it says the Supreme Court has held that state-imposed filing deadlines do not influence federal Title VII time limits and that filing a timely administrative charge is not a jurisdictional prerequisite for filing suit in court. The point is that in the EEOC case, EEOC v. Commercial Office Products, they recognized the existence of, by statute, the existence of the work-sharing agreement. The Rio Hotel case acknowledges that filing with the state court was sufficient and was all that was required for EEOC purposes. Now the argument is made, well, you don't have an interchangeable right-to-sue letter from EEOC by filing with the Fair Employment and Housing, Department of Fair Employment and Housing. The only way you could get such a letter, of course, was, as I said, filing with EEOC. Now, let me ask you one question. Was there a right-to-sue letter obtained from the State agency? Absolutely. Okay. Not only was it obtained, but it's exhibited in these proceedings. It's attached to the complaint. Now, of course, it's important. It's important to have Ms. Sorrell's Title VII rights protected in this litigation. It's important because- You know, I think maybe you ought to get to the merits now because we've taken an awful lot of time on the procedural question. Why don't you talk about the question of the failure to promote a claim and why you assert that the district court should not have granted summary judgment on that claim? I was going there, and I'm sorry. No, it's not your fault. We kept you busy with the procedures. Well, I was going there, you see, because the trial court said, We're not going to consider your Title VII claims, but we're going to consider all your claims under 1981, 42 U.S.C. 1981. But there's a different standard applied to 1981 claims than Title VII claims as to how they're decided, how they're determined. In the failure to promote, trial court evaluated Ms. Coe, a younger Caucasian female. She was evaluated. They evaluated the qualifications of Ms. Coe and Ms. Sorrell and determined that Ms. Coe was better qualified and that her promotion to office manager was a nondiscriminatory legitimate reason for hiring Ms. Coe. Well, the problem with that is that, and the trial court said, has demonstrated that it failed to promote plaintiff, not because of her race, but because she was not the most qualified applicant for the position. Now, she was not the most qualified applicant for the position. Well, if you say that Ms. Coe was more qualified than Ms. Sorrell, that means the trial court is weighing the qualifications of both parties and making a factual determination as to who should, in fact, get the job. And they're saying, we conclude. Well, wasn't the trial court saying at step three of the McDonnell-Douglas test that the company has offered a legitimate reason, namely that Ms. Coe was more qualified for the job and then at step four that there's been no showing of pretext or that that was a baseless, you know, excuse, that in a sense that may be making a decision, but it's saying that the company's reason that Ms. Coe was more qualified is not a pretext or excuse, but a valid reason. Well, in order for you to come to that conclusion, you must, out of necessity, say I've determined she's more qualified because before the trial court was the qualifications of my client and before the trial court were the qualifications of Ms. Coe. And they say, well, they're saying she's more qualified. And I say that's a question of fact. And we're saying that you cannot determine and the trial court can't determine that it was a question of fact that they could decide that it is a nonpretextual basis upon which, upon which you can say that we're promoting her because she's better qualified. Well, it also says she was drug impaired. And there was evidence at the time of summary judgment that she had been tested and found positive for a number of numerous substances, and that was one ground. Well, first of all, drugs, you say a number of substances. I must respectfully disagree with you because Ms. Sorrell was taken, taking prescribed medication consistent with her doctor's prescriptions. She also was tested on one occasion, and there appeared to be the fact that she had marijuana. But she doesn't smoke cigarettes. She doesn't drink alcohol. I mean, this is a very clean living lady, and this evidence was before the court. When she heard, when it became an issue that they found this substance, she immediately asked for a reevaluation, and she was told, no, you must go to rehabilitation. What supports this claim? Because she said, and I think she testified in her deposition, that at best, at best, what occurred was it could have been secondhand smoke. They produced extra. We've read the briefs on that. Excuse me. Well, I understand. You're running out of time. You only have almost a minute left, so. I have only one minute left. It just goes to show you about lawyers and talking. Failure to cross. Passes when you're having fun. Failure to cross-train. In this particular case, we pointed out that the court was wrong because they said we didn't rebut prior training of Holt, that this was a person who was cross-trained as a basis for training her. But we did. Because if you look at Ms. Sorrell's, and I understand this Court's view in this regard is to review De Novo, the Holt proceeding. If you look at that, she was told by Cox, her superior, she had no time to train her. She didn't. She said she didn't. She could do what she wanted to. Cox could do what she wanted to about training. She trained a younger Caucasian. Training was not unpaid for, as was suggested by the defendants. And Cal Water at the grievance, objected to by my client at the grievance, agreed that they needed a cross-training program. All right, counsel. I'm sorry. We'll have to. Your time has expired. But we'll give you an extra two minutes for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Raymond Lynch, and I'm representing California Water Service Company and Yvonne Cox. May I direct you to my first question I gave opposing counsel? What Ninth Circuit precedent requires that a Title VII complainant obtain a right to sue letter from the EEOC? On your briefs, you cite two state court decisions and the Fifth Circuit opinion in Jones, Jones v. Grinnell Corporation. Do you have any Ninth Circuit precedent on this issue? I do not have any Ninth Circuit precedent on this issue, Your Honor. We've cited every case that we were able to find that addresses this issue, and those cases uniformly hold that a state right to sue letter is not interchangeable with a Title VII right to sue letter. The reasoning is consistent in all these cases. Don't the cases also say that although the state's supposed to transfer the complaint to the federal agency, to the EEOC, that that's not necessary? And, in fact, the reason they said that is because sometimes the state agencies are so backlogged that they don't get around to doing that. So it would be somewhat pointless to go to get a letter from a federal agency that hasn't even received the case. Well, I don't think so. First of all, my understanding is that that transference is done to protect time limits so that there's a constructive filing. If you file with the state agency, it's deemed constructively filed with the EEOC. But there is no actual filing sometimes with the federal agency, and, therefore, how would they give you a right to sue letter? In this instance, if you go back and look at the charge, which is in the record, you'll see it's in small print, of course, but it states to the charging party, which was Ms. Sorrell, that if she wanted to proceed, she would need to obtain a right to sue letter. That's when she filed the charge. And, second, when she received her notice of a right to sue. She did get a right to sue letter from the state. She did get a right to sue letter from the state. And when she obtained the right to sue letter from the state, it, again, expressly advised her that if she wished to proceed with a Title VII claim, she needed to go to the EEOC and obtain a right to sue. My understanding of the law is that the right to sue letter is a predicate to bringing the action in federal court, and it is the final step that the EEOC is taking to basically state that it is not going to proceed, and, therefore, the individual. I'm sure you're familiar with the practice in EEOC law. I assume you do that fairly often. And then you know that most of the time the EEOC hasn't even gotten around to your case when they give you the right to sue letter. It's a huge backlog. And it doesn't really mean anything except that they say, okay, it's not that they've examined the case, investigated, talked to anybody, but it just means that a certain amount of time has passed, now you can sue. That may be true in some instances. I don't know. I don't know that there's evidence of that before the court. But I do know that, in practice, sometimes the state agency doesn't do very much either. But the point is you can't go into court and file a lawsuit unless you've filed and unless you've obtained that right to sue letter, regardless of what action the state took, because that's required by statute. Yes, that's true. And it's possible that a court could say that a state right to sue letter serves the same purpose, really, from a practical standpoint, and that the EEOC may not even have your case by then when you want the letter. So this is attacking at a stage of the proceedings where people are usually not represented by counsel and that it would be an unnecessary procedural barrier to the effort to get important civil rights cases determined to have them dismissed because you only have a state letter instead of a federal letter. Every court that's examined the issue. Well, the Fifth Circuit's the only court of appeals. They may have a different view of Title VII cases than we do. Perhaps. We have cited California case law that has addressed this issue from both sides of it, whether the DFEH letter was interchangeable with an EEOC, that's the Roman case, and correspondingly the Martin case, where it was the obverse, and we saw that reasoning applied in the decision that we called to your attention in Scheck. I believe that's a correct recitation of the law, and I believe that a right to sue letter, particularly when the charging party has noticed not once but twice that there should be an undertaking to obtain it, and that both of those documents were attached to the complaint, so certainly counsel was aware of it and could have moved to undertake to obtain such a letter. That wasn't done here. I don't believe that that is dispositive in any event because the court fully analyzed the Title VII claims here. It's notable. We didn't mention it, but it is notable that the plaintiff in this case or the appellant at this level, Title VII claim is solely a race-based claim. There was no age discrimination in employment under the federal law brought. There was no disability case under the federal law brought. So we're solely dealing with race, and with respect to the race claim, the district court conducted a very detailed analysis under Section 1981 to make a determination as to whether there was any basis for that claim, and that analysis applies equally to the Title VII claim. Why shouldn't all that go to a jury, all those factual determinations by the district judge? There really weren't any factual determinations, I believe, made by the district court judge. A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation. Actually, I intended to begin my remarks with that quote from the Carman case, because it's a Ninth Circuit decision. I think that it sums up what took place here. There's a lot of background in this, but if you winnow it down, there are really only three or four things that the plaintiff complained about here. We'll deal with the office manager job first. First, with respect to that, the plaintiff testified unequivocally at deposition that that was not part of her claim, and the court noted that in its opinion. And the only evidence that was presented in opposition to the summary judgment was a declaration prepared by the plaintiff. There were several parts of that declaration that were unequivocally inconsistent with her deposition testimony and other portions of it that were not based on personal knowledge or either speculation or personal opinion. With respect to the office manager job, there was no weighing of the evidence by the court, by the district court. The district court was presented with this evidence. First, the plaintiff said, I think I was qualified. I think I was more qualified. When asked, do you know what the qualifications were of the person that was selected, the answer was an unequivocal no. The evidence that was presented to the district court was that the successful applicant had five years of management experience. Ms. Sorrell had none. The successful applicant was a trained accountant. Ms. Sorrell was not. The successful applicant had worked as a city administrator at another city that had labor relations responsibility. All of this is in the record. And at the time, it's undisputed that the water company was going through a detailed conversion, was going to take over some of the city of Stockton's billings. And those specific qualifications that Ms. Coe possessed were superior. The point of all this is, in light of that, those business reasons for the selection and plaintiff's statement, which was no more than, I think I was qualified, there was no weighing. What the court was determining is there was no basis to make a determination that the individual's race, Ms. Sorrell's race, played any part in that decision or, for that matter, her age or any other protected category. What about the suggestion that your client had never promoted a person of color to a management position since 1927? That, first of all, was not evidence that was rejected by the court because the basis for that statement was a letter to the editor of a newspaper by someone who wasn't even the plaintiff. And this letter to the editor of a newspaper was attached to a declaration. And that's inadmissible. The court found it as such. It was obviously hearsay and was not considered, and I think appropriately so. Thank you. The plaintiff did testify to her own observation that in all the years she had been there, she had never seen a black person in management. Why isn't that admissible evidence? I'm not aware of that testimony, if it's there. If she testified to that, obviously that would be admissible. I don't think that that's something that's been relied upon here. But it doesn't change the evidence that was presented here, and it's uncontradicted with respect to that office manager position. And the court did analyze it in detail. Well, there would be. If there were enough evidence of racial bias, then I think it would be, it might undermine a showing of more qualification as a pretext, if you could show that there was general racial bias. There's not a showing here. There's no showing as to how many managers are in the office. There's no showing how long people held those positions. There's no evidence of any racial comment made by anyone. There's no admissible evidence here of anything based on race with respect to anything that transpired. I would address the Court's question on the other matters. There's the office manager job, which I think the evidence is overwhelming. The only other things that are referenced here was this cross-training issue, and, again, no evidence of race. The company came forward and explained they were in the conversion period. They were looking for someone to sit in at this job for five days. The evidence is uncontroverted that the person that sat in on that job for five days had undertaken training on her own. The job itself was never filled. It was only open. It wasn't even open. It was for five days someone was in there. There's a collective bargaining agreement that governed the terms and conditions of employment here, and it required that any job that would be open for more than 120 days would be posted and would be granted by seniority. This position never came open. With respect to the drug testing issue that is raised, again, the question really is, that's the basis for this retaliation claim, and it's undisputed, again, that the inquiry really is why was she tested, why was Ms. Sorrell tested? And Ms. Sorrell was tested because three supervisors observed her in what they believed to be an impaired state. By her own admission, she was slurring her words at work that day. It's undisputed that once there was a determination that there was a need for a test, a union representative was called, and the protocol that was undertaken was one that had been negotiated between the company and the union. And it's also undisputed that Ms. Sorrell was taking a variety of drugs, medications, and that she tested positive for marijuana. There's a reference that she immediately requested another test. That immediate request was five days later, of course, and the sample would not be the same. And they followed the precise protocol, no grievance was filed. Have I addressed your questions, Judge? Yes, you have. Okay. So with respect to Title VII, we view that as the exhaustion was correct by the district court, but in any event, the claim was analyzed and it was referenced by the district court opinion that in the issues of completeness, it would analyze that claim as well. And it went through each of the issues that the plaintiff raised and examined them closely, and in each instance found no evidence that any decision was taken by race or by age. It really focused on the company's legitimate business reasons that were presented for each decision and found no evidence to show that they were pretextual in any way. But it was before the district court that no black or Latino employee had been hired for a management position in Stockton for decades. Is that correct? Was that before the district judge? It was not before the district judge. It was only in that article. It was only that article. There was no discovery conducted on that point. And it was just that. Okay. Thank you. Well, you asked before about the ‑‑ whether her testimony or statement that in all the years she had been working, I don't know how many years that was, that she had never seen a black management person. Ms. Sorrell was employed by the water company from 1997 until the year 2001, at which time she was in an automobile accident and was on the water company. And she was on a leave of absence for a year. She returned to the workplace in April of 2002. She went through rehabilitation based on the first drug test approximately during the month of September 2002 and by January 2003, she was again tested positive and went on an extended paid leave of absence. At the end of that time, she came back and based on discussions with management and the union and Ms. Sorrell and information that she provided, she said that she was unable to work. And she was granted a leave. I didn't mean to get into the argument. I was just saying that you had asked about whether she had said that. And according to your opponent's brief, it's an excerpt of record 559 that she said, quote, she had never seen any black people promoted to office management. And that's when she prepared her list, which was excluded. Right. That was probably in her declaration. I would add that, again, this is the, some of this might be in the record, but California Water Service Company does not just occupy, work at, they have a location in Stockton. The fact of the matter is, and I'm not sure if this is in the record or not, but there are about 50 employees at that location, and there are probably a few other employees in the office. Three or four, perhaps maybe four or five supervisors or managers. And at that location, the company is company-wide. I don't think that any evidence of that one way or the other would really be probative of anything under the circumstances. You'd have to really start to look at a wider cross-section of what the company did. There may even be, and it's hearsay, a response to that letter to the editor contained in the record. Which explained that there were Hispanics and minorities and African-American supervisors in other locations of the company. It's not in the record, but the fact of the matter is, there is an African-American supervisor there. But I don't know if that, does that respond to your question, Judge Reimer? It wasn't even a question. I was just saying that the only evidence, and I wasn't weighing the evidence, I was simply saying, as I said earlier, that the, it could be that there was an African-American supervisor there. And that the qualification argument advanced could be undermined if there were, as pretext, if there were sufficient evidence of racial discrimination. I wasn't suggesting whether there was or wasn't. I'll make a brief comment on the mental disability issue. I think it may well, physical disability issue, it's referenced, I think it was waived below the district court found that there was an African-American supervisor there. It was found that there was not an exhaustion of the physical disability. In fact, that box was checked on the charge. It's harmless error because the district court analyzed each of the decisions that the failure to promote the cross-training, the drug testing, job criticisms, and those applied as well to the disability, and that was the thrust of it. The fact of the matter is that there was not even a prima facie case, I believe, of disability discrimination because there was never a claim to physical disability. And when Ms. Sorrell claimed that she was disabled, she said she was unable to work and she was granted a leave. And throughout the pendency of these proceedings was on leave, much of that leave being paid. I note I'm close to the end of my remarks here. I just want to say I think this is a case that cries out for summary judgment, and I believe that the district court really got this right. There really was nothing to support these claims other than speculation, other than personal opinion. And at summary judgment, we presented detailed, specific probative evidence to demonstrate that the treatment of Ms. Sorrell from beginning to end was based on legitimate business reasons and legitimate legal reasons. And it was done consistent with the collective bargaining agreement. Are you acknowledging that the failure to promote claim is properly here and on appeal, or are you asserting that that claim was not properly raised? I don't believe it was properly raised. I believe that plaintiffs... Do you feel that it is not properly before us, or that it was not properly raised, or what? What is your position with respect to that issue? My position with respect to that is that the plaintiff's testimony at deposition that it was not part of her claim was dispositive and under the Kennedy case should not have been considered. The position is that the district court nevertheless analyzed it fully and found it to be meritless. And what does that mean, the district court nevertheless analyzed it? Does that mean that it is now properly an issue for us to consider or not? I don't think that the court needs to consider it. And I think that if the court does, we have to conclude that it's harmless error. Okay. I give up. Thank you very much. Two minutes. First of all, counsel said, my client testified, quote, I think I was qualified, close quote. And that's the basis upon which she brought before California Water Services why she should be the office manager. Absolutely wrong. The evidence in this case was she was five years on the job, she had a college background, she had a career, she had a job. She had an associate of arts degree, she had a bachelor in community affairs. She was fully familiar with how that office in Stockton operated, ran, and she applied for that job and two other office position jobs. Now, it was suggested that in a declaration, there was some question about not promoting blacks, African-Americans, African-Americans. Well, counsel said, oh, that was in a letter to an editor. Well, what happened was that my client prepared a log that she kept a record of events that took place and statistical information concerning promotions and nonpromotions. At her deposition, she gave this to counsel, her log, her log was attached to her deposition. And Mr. Lynch, counsel for Cal Water, offered that as evidence in the motion for summary judgment, which now, before this court, suddenly becomes, oh, it was all not admissible. I suggested it was admissible, and I suggested it was properly considered but not addressed by the trial court, and so it is before this court. And not only is it attached to portions of her deposition, but it's also referred to in her declaration in opposition to the motion for summary judgment. Now, additionally, the reason why the court's analysis under 42 U.S.C. 1981 is not proper, because under that section, there is a clause that says, you cannot consider, first of all, all you can consider is action that is affirmative, that is, it has to be purposeful discrimination under 1981. It has to be intentional discrimination under 1981. In this case, and also it does not, under 1981, you can't consider age. In this case, the office manager was a younger Caucasian, so age was before the trial court and should have been considered, but was not. All right, counsel. I think we've gotten over three minutes. One more? One more minute. It's truly nice to be nice. For this court to conclude that it's necessary to obtain a right to sue letter from EEOC after filing with Fair Employment and Housing, which set at large all those cases that have decided the work-sharing agreement application. And I submit counsel's suggestion that that should be done just is not appropriate under the circumstances. Thank you.
judges: Nelson, Reinhardt, Oberdorfer